# Lessee of Daniel Gripe *against* Rev. David Baird.

A warrant unsigned by the governor, where money has been paid upon it, is good evidence, and confers an authority to survey the lands.   A warrant or application, generally descriptive but vague, without a survey, must give way to a subsequent one of the same kind, whereon a survey has been made, or to a precise and accurate one, without a survey.   Practice of surveying, 10 per cent. surplus before the revolution.

THIS cause came on again to trial.   The dispute was confined to 16 acres in Allegheny township, which took in a small part of the meadow, and the barn, stable and spring house of the defendant.

*The plaintiff deduced his title, under a warrant to Samuel Smith, dated 3d February 1755, which was not [*216 signed by the governor for the time being.   But he shewed a credit in the books of the receiver general, of the same date for 5l. paid on this warrant, for 100 acres in the forks of the North Branch, near the mouth of Beaver Dam, about three or four miles from James Lowrey, in Cumberland county.

The warrant was shewn in evidence without opposition, and it was agreed to be an authority to survey the lands, the party having complied with the contract on his part.

On the 3d December 1774, a survey of 118 acres and allowance was made on this warrant by Thomas Smith, (D. S.)

The defendant claimed under a warrant to Joseph Brown, dated 31st May 1762, for 300 acres on the middle branch of

[Gripe's Lessee *v.* Baird.]

Frankstown creek, between two and three miles from there ; on which a survey of 304 acres was said to be made by Richard Tea, on the 25th May 1765, and returned into the surveyor general's office, on the 23d December 1766.

The defendant controverted the plaintiff's warrant, being accurately descriptive of the lands in question, and insisted that it called for lands distant therefrom two miles. Several witnesses were examined on both sides, as to this point.

On the other hand, it appeared that Tea or his deputy had committed a mistake in making the survey for Brown ; and afterwards on the discovery thereof, had extended the lines, and included double the quantity actually surveyed in his return of survey. His right to extend the lines on paper without an actual survey, was much controverted.

SMITH, J. declined giving any opinion, having made the survey under which the plaintiff claimed.

After argument by counsel, YEATES, J. charged the jury, that he knew of but three rules which were applicable to the present case.

1st. A plaintiff in ejectment must recover by the strength of his own title. 2d. Where there has been negligence in obtaining a survey, a warrant or location generally descriptive but vague in its terms, must give way to a subsequent warrant or location equally vague whereon a survey has been made, or to a subsequent precise warrant and location even without a survey, where it accurately describes the lands. 3d. Under the order of the Board of Property of the 1st May 1767,* the deputy surveyors *were not to return more than 10 per cent. beyond the *217] usual allowance for roads, on the quantity of lands contained in the warrant or application. But this only held where there was no conflicting right when the survey was made ; for in such case the deputy was not permitted to exceed the quantity called for, with the allowance of 6 per cent. for roads. This was equal justice, and conformable to the settled practice of the land office. It had been pursued in the Circuit Court at Bedford in November 1801, in Elliot's lessee *v.* Bonnet, where the jury were strongly disposed to find the surplus of 10 per cent. for the plaintiff. The second rule had been recognized by repeated decisions, and had become the settled law of the country.

The first inquiry with the jury would be, to ascertain whether the warrant of Brown was so described, as that it could be laid on no other place than on the premises in question. If it was vague and loose, then the verdict must be necessarily for the

* The order is as follows : " As to what is past as to excesses of surveys, the sur-
" veyor general shall receive the returns, though they exceed the quantities men-
" tioned in the warrants or applications, and the 10 per cent. But, for the future
" the governor strictly charges his deputies, that they shall not, on any pretence, re-
" turn more than the quantity, with the allowance for roads, and the 10 per cent.,
" upon pain of being obliged, at their own expence, to rectify any surveys they shall
" return with such excess of quantity."

[Addleman *v.* Way.]

plaintiff ; but if it was close and precise, as the court strongly inclined to think, then the last rule would apply, and the plaintiff should be confined to his 130 acres and allowance on his warrant.    This rendered it unnecessary to consider the right of deputy surveyors to extend surveys made on the ground before return.    The case of Nicholas's lessee *v.* Holliday, determined here in May 1802, was determined on the ground of the original mistake being made by the agent of Richard Tea, who directed an extension of the lines, and who claimed the additional lands so included.

The judge professed to go no further than was absolutely necessary in the decision of the case before the court ; but he could not avoid saying, that this was a strong case in favour of a second purchaser under the warrantee.    Viewing the matter in the strongest light against the defendant, here had at least been an attempt to make a survey in May 1765, and lines had been run on the ground.    A return of survey operates as notice on a shifted warrant or application.    This survey was returned into the surveyor general's office in December 1766, and was known at the time of the plaintiff's survey in December 1774.    In the draft thereof it is stated in a N. B., the above "survey takes "off part of the tract surveyed for Joseph Brown."    Consequently, there was an opposing claim known at the time, which *confined the survey to the precise number of acres contained in the warrant.                                                    [*218

Verdict for the defendant.

Messrs. Duncan and S. Riddle, *pro quer.*

Messrs. Hamilton and Watts, *pro def.*

Referred to in 2 S. & R. 559.
Cited in 7 S. & R. 335 in support of the decision that a survey in 1793, of 328 acres, on a warrant for 150 acres, to the prejudice of the improvement right of a third person to 300 acres, which improvement was made prior to the survey, is bad.